IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PAYROLL MANAGEMENT
INC., et al.
         Plaintiffs,

v.                                        CASE NO.: 3:10cv471/MCR/CJK

LEXINGTON INSURANCE
COMPANY,
         Defendant.

_____

# O R D E R

Before the court for resolution is defendant's Emergency Motion for Protective Order (doc. 9), filed on April 8, 2011, and Plaintiff's Response (doc. 12) filed on April 12, 2011. Plaintiffs Payroll Management, Inc. and Payroll Management Inc. of Delaware (PMI) are employee leasing companies conducting business in Fort Walton Beach, Florida. Plaintiff Yoohoo Capital, LLC (Yoohoo) is a Georgia company that has recently purchased PMI. Defendant Lexington Insurance Company (Lexington) is an insurance company that issued a "PEO Plus" Employment Practices Liability Insurance policy, no. 020432538 to PMI for coverage during the policy period of January 28, 2010 through January 26, 2011.

The Blue Cross/Blue Shield Matter

As set out in the complaint (doc. 1-1), PMI had, at an earlier date, contracted with Blue Cross/Blue Shield of Florida for health insurance for PMI's clients. Lisa Burrows, the former owner of PMI, had involvement in the transaction with Blue

Cross/Blue Shield, and in September 2009, Ms. Burrows stopped making payments of regularly scheduled premiums to Blue Cross/Blue Shield. Blue Cross/Blue Shield, having received no payments for several months, cancelled its policy as of January 31, 2010. Blue Cross/Blue Shield then filed a state court action against PMI for the unpaid premiums. Once served with the Blue Cross/Blue Shield law suit, PMI informed Lexington that Lexington had coverage for Ms. Burrows' actions under the Lexington policy that had been issued to Payroll. Payroll asserts that coverage is due under Coverage B of Lexington's policy entitled "Professional/Employment Practices Liability." The coverage language upon which Payroll relies reads:

> "We will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Loss Amounts resulting from any Claim first made against an Insured and reported to Us in writing during the Policy Period (or any applicable extended reporting period) for any Wrongful Professional Act, or Wrongful Employment Practice Act, which takes place anywhere and on or after the applicable retroactive date as Indicated in the Declarations next to the type of Wrongful Act involved and before the end of the Policy Period."

Also, and during the pendency of the Blue Cross/Blue Shield lawsuit, prospective buyers were considering the purchase of PMI. In the course of due diligence, plaintiff Yoohoo, a prospective purchaser, wanted assurance that Lexington would provide insurance coverage with regard to the Blue Cross/Blue Shield law suit and, therefore, requested that PMI obtain some sort of assurance from Lexington as to that matter.

PMI's complaint alleges with some specificity that one of its employees contacted Stephen D. Burwell, an employee of Lexington, and explained the need for reassurance to a prospective purchaser. According to the allegations, Mr. Burwell

was informed of an upcoming closing date, and also informed that Yoohoo would be the purchaser. PMI and Yoohoo allege that Mr. Burwell stated in both an e-mail and a telephone call that "there appeared to be coverage under the policy." The complaint further alleges that Mr. Burwell worked with PMI in order to identify counsel who would represent PMI in the Blue Cross/Blue Shield lawsuit. One month after Mr. Burwell's alleged representations, however, Lexington denied coverage for PMI's claim under the policy.

This Action

PMI has now brought a claim for breach of contract and declaratory action against Lexington, alleging that coverage exists for the Blue Cross/Blue Shield claim and that the court should decree such coverage and also decree that Lexington has violated the contract of insurance. Yoohoo, also as a plaintiff in this matter, has brought a claim against Lexington for negligent misrepresentation, alleging that it reasonably relied upon the representations made by Lexington's agent, Burwell, to the effect that the Blue Cross/Blue Shield claim would be covered under the Lexington policy.

The Present Discovery Dispute.

Lexington has now filed its Emergency Motion for Protective Order (doc. 9). Lexington represents that the plaintiffs have scheduled the depositions of Stephen Burwell and, pursuant to Rule 30(b)(6), Fed. R. Civ. P., a corporate representative of Lexington. Notices of deposition as to both Burwell and the corporate representative set forth the following areas of inquiry:

1.     Lexington Insurance Company's usual insurance coverage practices regarding Professional Employment Organizations (PEO's).

2.     Lexington Insurance Company's usual insurance coverage practices regarding their Directors and Officers Insurance (D&O) policies.

3.     Lexington Insurance Company's usual insurance coverage practices regarding Employment Practices Liability Insurance (EPLI) policies.

4.     Payroll Management Inc.'s specific insurance coverage with Lexington.

Lexington now asks the court to issue a protective order prohibiting entirely the deposition of a 30(b)(6) representative, and limiting the deposition of Burwell to factual issues regarding the negligent misrepresentation claim.   According to Lexington, any other testimony would not be relevant to the subject matter of the pending action and not reasonably calculated to lead to the discovery of admissible evidence.  Lexington argues that, under Florida law, a coverage dispute such as that now before the court, is resolved entirely upon the court's construction of the policy language.  Accordingly, says Lexington, no testimony that could be provided by its corporate representative could be discoverable.  As to Mr. Burwell, Lexington agrees that plaintiffs are entitled to take his deposition regarding the conversations he had with Payroll, but asserts that the court should limit the Burwell deposition to factual issues related to the claim of misrepresentation.

Plaintiffs have responded noting that the scope of discovery would be limited were this strictly a declaratory judgment action seeking to establish coverage under the Lexington policy.  Plaintiffs argue, however, that the inclusion of a negligent

misrepresentation claim, by which Yoohoo seeks damages for its reasonable reliance, expands the scope of discovery beyond that which would ordinarily obtain in a declaratory judgment action for insurance coverage.

Finally, and before going into analysis of the issue, the court notes the following factual allegations made by plaintiffs in their complaint (doc. 1-1):

> An employee of the insured, D.C. Mickle, contacted Stephen D. Burwell, an employee of insurer, and explained that prospective purchasers of Payroll Management, inc., needed reassurance that there would be insurance coverage from insurer regarding the BCBS lawsuit in order to proceed with the prospective sale. Furthermore, Mr. Burwell was informed of the pending closing date of June 15, 2010 regarding the sale of the insured to Yoohoo.
>
> On or about June 15, 2010, Mr. Burwell stated in a phone conversation with DC Mickle, that by the terms of the policy there would be coverage for the BCBS lawsuit.
>
> In a follow-up e-mail dated June 15, 2010, a copy of which is attached hereto as <u>PLAINTIFFS' EXHIBIT "C"</u>, Stephen D. Burwell indicated that there appeared to be coverage under the Policy.
>
> Mr. Burwell then contacted the insured regarding selection of counsel to represent the insured in the BCBS lawsuit.
>
> The insured asked that a Tallahassee law firm represent them.
>
> Mr. Burwell called back a few days later and stated that the insured's first choice of counsel was not on the insurer's list of approved counsel. The insured responded that anyone on this list was fine.
>
> The statement made by insurer's agent, Stephen D. Burwell, concerning insurance coverage for the BCBS lawsuit on or about June 15, 2010 was false.

Insurer did not exercise reasonable ordinary care in representing that there would be insurance coverage for the BCBS lawsuit, since the insurer should have known that this representation was false.

Insurer was aware of the prospective purchase of Payroll Management, Inc., and that DC Mickle would communicate Stephen D. Burwell's representation as to coverage to the prospective purchasers, including Yoohoo.

Insurer intended that the prospective purchasers would rely on the representation communicated by Stephen D. Burwell to DC Mickle via the phone conversation and e-mail of June 15, 2010.

Analysis.

Both sides rely upon *Diamond State Insurance Company v. His House, Inc.*, 2011 WL 146837 (S.D. Fla.)  In *Diamond State*, a thoroughly done analysis by Magistrate Judge Simonton in the Southern District of Florida, the court held that in a declaratory judgment action over insurance coverage the insured would not be allowed to conduct a Rule 30(b)(6) deposition inquiring into the following matters:

(1) policies at issue in this clause; (2) the issuance and procurement of the policies; including Diamond State's underwriting considerations in issuing the policies and setting the premiums; (3) Diamond State's interpretation of the policies, which interpretations their declaratory action is based on; (4) His House's application for the insurance policies and all information disclosed therein and in the overall application process, including the potential liability for the claim giving rise to this action; and (5) Diamond state's handling of His House's claim and ultimate denial thereof.

Digesting Florida law concerning insurance coverage disputes, the *Diamond State* court explained why the extrinsic evidence sought from a corporate

representative could not be relevant in a pure coverage dispute based upon the language of the policy at hand:

> "First, if the court determines that the language of the professional liability policy and the commercial general liability policy are unambiguous, then the court will resolve the dispute about coverage based upon the plain language of those policies without resort to extrinsic language, including any interpretation by Diamond's corporate representative regarding the language or terms of the policies. Second, in the event that the court determines the policy language is ambiguous, defendants will automatically prevail in the instant declaratory action."

2011 WL 146837, *4.

PMI acknowledges the rule set out in *Diamond State*, but urges the court's attention to additional language in that decision:

> In addition, His House correctly notes that there has been no bad-faith claim raised in the instant action, nor are there allegations related to misrepresentation or fraud either of which might well necessitate deposing Diamond's corporate representative. Rather, in this action the only issue is whether there is coverage under the relevant policies or if, based upon the plain language of those policies, coverage, in the form of defending or indemnifying the insured, exists.

2011 WL 146837, *4.

The tort of negligent misrepresentation is well-recognized in Florida. _See_ _Gilchrist Timber Co. v. ITT Rayonier, Inc._, 696 So. 2d 334 (Fla. 1997). Under Florida law, a party who transmits false information which that party did not know was false, may be held liable for negligent misrepresentation when the recipient of the information relied on the information's truthfulness. *Id*. In confirming that Florida recognizes the tort of negligent misrepresentation, the Florida Supreme Court

found guidance in §552, Restatement (Second) of Torts:

> "(1) one who, in the course of his business, professional or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

*Id.*

The elements of the tort are well-known:

> "to establish negligent misrepresentation, a plaintiff must establish (1) misrepresentation of a material fact; (2) the representor knew of the misrepresentation, made the misrepresentation without knowledge as to its truth or falsity, or made the representation under circumstances in which he ought to have known of its falsity; (3) the representor intended that the representation induce another to act on it; and (4) injury resulting to the party acting in good justifiable reliance."

*Birdsong v. Ehlke*, 2010 WL 5141774 (N.D.Fla. 2010).

The parties, referring to Joint Report of Parties' Planning meeting (doc. 6), agree that two issues remain for determination in this case:

> "Principle factual issues:
>
> Whether Lexington made a misrepresentation regarding coverage upon which Yoohoo reasonably relied.
>
> Principal legal issues:
>
> Whether the Lexington policy provides coverage for the Blue Cross Blue Shield lawsuit filed against Payroll Management, Inc."

PMI, in its Response (doc. 12) to the Emergency Motion for Protective Order, argues that discovery will be necessary to learn why Lexington took steps to lead PMI to believe for several months that coverage existed. PMI urges that it must be allowed, in order to make these determinations, to conduct full and complete discovery of the facts surrounding the alleged misrepresentation of Lexington. PMI also argues that even though this case does not involve a Directors and Officers (D&O) policy, it should be allowed discovery into Lexington's coverage practices with regard to D&O policies because at a previous deposition Lexington made the claim that if PMI had secured D&O coverage rather than Employment Practices Liability Coverage, the Blue Cross/Blue Shield claim would have been covered . (doc. 12, §9).

Given the elements of negligent misrepresentation in Florida, and particularly the requirement that plaintiff prove that the representor knew of the misrepresentation or made the representation under circumstances in which the representor should have known of its falsity, I conclude that the allowable discovery in this matter is closer to that characterized by plaintiffs than it is by Lexington. In particular, plaintiffs are entitled to discover Burwell's state of knowledge, and any communications he may have had with others at Lexington in connection with the representations he is said to have made to PMI. Burwell's intent and knowledge (or lack of knowledge), as well as the steps he made to determine whether coverage existed, are relevant to the negligent misrepresentation claim. Accordingly, these considerations will form the parameters of the allowed inquiry.

The court does not agree with PMI's's rather cursory argument that it may inquire into Lexington's D&O coverage because a D&O policy may have provided

coverage for the Blue Cross/Blue Shield suit. Accordingly, I will not allow inquiry into D&O coverage. As an adjunct to this ruling, however, and although the question is not before me, I would caution that Lexington would now appear to be estopped from raising a raise a claim that plaintiffs were comparatively negligent in their failure to purchase a D&O policy.

Accordingly, it is

ORDERED AND ADJUDGED as follows:

1.      Defendant's Emergency Motion for Protective Order is DENIED IN PART and GRANTED IN PART;

2.      Solely within the parameters of Mr. Burwell's actions, Lexington will be required to produce a 30(b)(6) deponent concerning item 4, Payroll Management Inc.'s specific insurance coverage with Lexington;

3.      With regard to items 1 and 3 of the areas of inquiry, Plaintiffs will be allowed to inquire into Lexington Insurance Company's insurance coverage practices regarding professional employment organizations and employer/employment practices liability insurance, but only with regard to information known by or conveyed to Stephen Burwell during the time he is alleged to have made the representations germane to this case. The company's general practices, if not connected to Mr. Burwell's representations, will not be an appropriate subject for discovery in this case;

4.      This order shall not be construed to allow discovery into matters that occurred temporally after the last communication alleged by PMI to have occurred between Mr. Burrell and representatives of PMI, nor into Lexington's decision to

deny coverage, as such inquiries would not be relevant to the misrepresentation alleged to have injured Yoohoo.

5.     PMI will not be allowed discovery concerning Lexington's practices regarding Directors and Officers' insurance policies;

6.     Lexington must designate a 30(b)(6) representative with knowledge concerning the inquiries that will be allowed under this order;

7.     PMI may inquire of Mr. Burwell, concerning his knowledge as to the matters deemed discoverable by this order.

DONE AND ORDERED this 13th day of April, 2011.


*s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**